Justice Scalia, with whom The Chief Justice and Justice Thomas join,
dissenting.
The statutory provision at issue here authorizes the Attorney General to permit an alien who has been found deport-able, if he so requests, to depart the country voluntarily. This enables the alien to avoid detention pending involuntary deportation, to select his own country of destination, to leave according to his own schedule (within the prescribed period), and to avoid restrictions upon readmission that attend involuntary departure. The statute specifies that the permission “shall not be valid for a period exceeding 60 days,” 8 U. S. C. § 1229e(b)(2), and that failure to depart within the prescribed period causes the alien to be ineligible for certain relief, including adjustment of status, for 10 years, § 1229c(d)(1) (2000 ed., Supp. V). Moreover, pursuant to a regulation that the Court accepts as valid, departure (whether voluntary or involuntary) terminates the alien’s ability to move for reopening of his removal proceeding, and withdraws any such motion filed before his departure. See 8 CFR § 1003.2(d) (2007). All of these provisions were in effect when petitioner agreed to depart, and the Court cites no statute or regulation currently in force that permits an alien who has agreed voluntarily to depart to change his mind. Yet the Court holds that petitioner must be permitted to renounce that agreement (the opinion dresses this up as “withdraw[ing] the motion for voluntary departure”) provided the request is made before the departure period expires. Ante, at 5. That is “necessary,” the Court says, to “preserve the alien’s right to pursue reopening,” ante, at 19, forfeiture of which was the known consequence of the departure he had agreed to. The Court’s perceived “necessity” does not exist, *24 and the Court lacks the authority to impose its chosen remedy. I respectfully dissent.
The Court is resolute in its belief that there is a “conflict between the right to file a motion to reopen and the provision requiring voluntary departure no later than 60 days.” Ante, at 5. The statute cannot be interpreted to put the alien to the choice of either (1) “remaining] in the United States to ensure [his] motion to reopen remains pending, while incurring statutory penalties for overstaying the voluntary departure date” or (2) “avoiding] penalties by prompt departure but abandoning] the motion to reopen.” Ibid. This, according to the Court, would “render the statutory right to seek reopening a nullity in most cases of voluntary departure.” Ante, at 16. Indeed, the problem is of mythological proportions: “[T]he alien who is granted voluntary departure but whose circumstances have changed in a manner cognizable by a motion to reopen is between Scylla and Charybdis: He or she can leave the United States in accordance with the voluntary departure order; but, pursuant to regulation, the motion to reopen will be deemed withdrawn.” Ante, at 18. So certain is the Court of this premise that it is asserted no less than seven times during the course of today’s opinion. See ante, at 5, 16, 18-22.
The premise is false. It would indeed be extraordinary (though I doubt it would justify a judicial rewrite) for a statute to impose that stark choice upon an alien: depart and lose your right to seek reopening, or stay and incur statutory penalties. But that is not the choice this statute imposes. It offers the alien a deal, if he finds it in his interest and wishes to take it: “Agree to depart voluntarily (within the specified period, of course) and you may lose your right to pursue reopening, but you will not suffer detention, you can depart at your own convenience rather than ours, and to the destination that you rather than we select, and you will not suffer the statutory restrictions upon reentry that accompany involuntary departure. If you accept this deal, how *25 ever, but do not live up to it — if you fail to depart as promised within the specified period — you will become ineligible for cancellation of removal, adjustment of status, and voluntary departure.” Seems entirely reasonable to me. Litigants are put to similar voluntary choices between the rock and the whirlpool all the time, without cries for a judicial rewrite of the law. It happens, for example, whenever a criminal defendant is offered a plea bargain that gives him a lesser sentence than he might otherwise receive but deprives him of his right to trial by jury and his right to appeal. It is indeed utterly commonplace that electing to pursue one avenue of relief may require the surrender of certain other remedies.
Petitioner requested and accepted the above described deal, but now — to put the point bluntly but entirely accurately — he wants to back out. The case is as simple as that. Two days before the deadline for his promised voluntary departure, he filed a motion asking the Board of Immigration Appeals (BIA) to reopen his removal proceedings and remand his case to the Immigration Judge for adjustment of status based on his wife’s pending visa petition. Administrative Record 3; see id., at 8-21. The motion also asked the BIA to “withdraw his request for voluntary departure” and “instead accep[t] an order of deportation.” Id., at 10. After the voluntary departure period expired, the BIA denied petitioner’s motion to reopen, explaining that under 8 U. S. C. § 1229c(d) (2000 ed. and Supp. V), “an alien who fails to depart following a grant of voluntary departure ... is statutorily barred from applying for certain forms of discretionary relief.” App. to Pet. for Cert. 3-4.
It seems to me that the BIA proceeded just as it should have, and just as petitioner had every reason to expect. To be sure, the statute provides for the right to file (and presumably to have ruled upon in due course) a petition to reopen. But it does not forbid the relinquishment of that right in exchange for other benefits that the BIA has discretion to *26 provide. Nor does it suggest any weird departure from the ancient rule that an offer (the offer to depart voluntarily in exchange for specified benefits, and with specified consequences for default) cannot be “withdrawn” after it has been accepted and after the quid pro quo promise (to depart) has been made.
The Court’s rejection of this straightforward analysis is inconsistent with its treatment of petitioner’s argument that the statute requires automatic tolling of the voluntary departure period while a motion to reopen is pending. With respect to that argument, the Court says:
“Voluntary departure is an agreed-upon exchange of benefits, much like a settlement agreement. In return for anticipated benefits, including the possibility of readmission, an alien who requests voluntary departure represents that he or she ‘has the means to depart the United States and intends to do so’ promptly. Included among the substantive burdens imposed upon the alien when selecting voluntary departure is the obligation to arrange for departure, and actually depart, within the 60-day period.” Ante, at 19 (citations omitted).
Precisely so. But also among the substantive burdens is the inability to receive certain relief through a motion to reopen once the promised departure date has passed; and perhaps paramount among the substantive burdens is that the alien is bound to his agreement. The Court is quite right that the Act does not allow us to require that an alien who agrees to depart voluntarily must receive the benefits of his bargain without the costs. But why does it allow us to convert the alien’s statutorily required promise to depart voluntarily into an “option either to abide by the terms, and receive the agreed-upon benefits, of voluntary departure; or, alternatively, to forgo those benefits and remain in the United States to pursue an administrative motion”? Ante, at 21. And why does it allow us to nullify the provision of *27 § 1229c(d)(1) that failure to depart within the prescribed and promised period causes the alien to be ineligible for certain relief, including adjustment of status (which is what petitioner seeks here) for 10 years?
Of course it is not unusual for the Court to blue-pencil a statute in this fashion, directing that one of its provisions, severable from the rest, be disregarded. But that is done when the blue-penciled provision is unconstitutional. It would be unremarkable, if the Court found that the alien had a constitutional right to reopen, and that conditioning permission for voluntary departure upon waiver of that right was an unconstitutional condition, for the Court to order that the alien cannot be held to his commitment. But that is not the ease here. The Court holds that the plain requirement of the statute and of validly adopted regulations cannot be enforced because the statute itself forbids it.
Not so. The Court derives this prohibition from its belief that an alien must, no matter what, be given the full benefit of the right to reopen, even if that means creating an extra-statutory option to renege upon the statutorily contemplated agreement to depart voluntarily. “We must be reluctant to assume,” the Court says, “that the voluntary departure statute was designed to remove this important safeguard [of the motion to reopen],” “particularly so when the plain text of the statute reveals no such limitation.” Ante, at 18. But in fact that safeguard is not sacrosanct. The “plain text of the statute” does cause voluntary departure to remove that safeguard for at least 30 days of its 90-day existence, and permits voluntary departure to remove it almost entirely. Section 1229a(c)(7) (2000 ed., Supp. V) generally permits the filing of a motion to reopen “within 90 days of... entry of a final administrative order of removal.” But as I have described, § 1229c(b)(2) (2000 ed.) provides that a grant of voluntary departure issued at the conclusion of removal proceedings “shall not be valid for a period exceeding 60 days.” Since motions to reopen cannot be filed after removal or de *28 parture, the unquestionable effect of the statutory scheme is to deprive the alien who agrees to voluntary departure of the (sacrosanct) right to reopen for a full third of its existence. And since 60 days is merely the maximum period for a voluntary departure, it is theoretically possible for the right to reopen to be limited to one week, or even one day. Given that reality, it is not at all hard to believe that the statute allows nullification of motions to reopen requesting adjustment of status filed within the 60-day departure period and not ruled upon before departure. Indeed, it seems to me much more likely that the statute allows that than that it allows judicial imposition of the unheard-of rule that a promise to depart is not a promise to depart, and judicial nullification of a statutorily prescribed penalty for failure to depart by the gimmick of allowing the request for voluntary departure to be “withdrawn.”
The same analysis makes it true that, even under the Court’s reconstructed statute, a removable alien’s agreement to depart voluntarily may limit, and in some instances foreclose, his ability to pursue a motion to reopen at a later date. Even if the alien who has agreed to voluntary departure is permitted to renege within the specified departure period, that period can be no longer than 60 days after entry of the order of removal — meaning that he has been deprived of at least 30 days of his right to reopen. Thus, the Court has not “reconciled” statutory provisions; it has simply rewritten two of them to satisfy its notion of sound policy — the requirement of a commitment to depart and the prescription that a failure to do so prevents adjustment of status.
The Court suggests that the statute compels its conclusion because otherwise “[wjhether an alien’s motion will be adjudicated within the 60-day statutory period in all likelihood will depend on pure happenstance — namely, the backlog of the particular Board member to whom the motion is assigned” and because “arbitrary results are ‘not to be presumed lightly.’” Ante, at 17-18. It is, however, a happenstance that the alien embraces when he makes his *29 commitment to leave, and its effect upon him is therefore not arbitrary. If he wants to be sure to have his motion to reopen considered, he should not enter into the voluntary departure agreement. A reading of the statute that permits that avoidable happenstance seems to me infinitely more plausible than a reading that turns a commitment to depart into an option to depart.
But the most problematic of all the Court’s reasons for allowing petitioner to withdraw his motion to depart voluntarily is its reliance on the Department of Justice’s (DOJ) as-yet-unadopted proposal that is in some respects (though not the crucial one) similar to the Court’s rule. See ante, at 20-21 (citing Proposed Rules, DOJ, Executive Office for Immigration Review, Voluntary Departure: Effect of a Motion To Reopen or Reconsider or a Petition for Review, 72 Fed. Reg. 67674, 67677, and n. 2 (2007)). I shall assume that the proposed rule would be valid, even though it converts the statutory requirement of departure within the prescribed period (on pain of losing the right to seek adjustment of status) into an option to depart.[1] According to the Court, the proposed regulation “‘warrants respectful consideration.’” Ante, at 20. What this evidently means is respectful adoption of that portion of the proposed regulation with which the Court agrees, and sub silentio rejection of that portion it disfavors, namely: “The provisions of this proposed rule will be applied . .. only with respect to immigration judge orders issued on or after the effective date of the final rule that grant a period of voluntary departure,” 72 Fed. Reg. 67682. See Supp. Brief for Respondent 8-9 (observing that the rule “will not apply to petitioner’s case”). *30 Our administrative law jurisprudence is truly in a state of confused degeneration if this pick-and-choose technique constitutes “respectful” consideration.
It must be acknowledged, however, that the Department’s proposed regulation has some bearing upon this case: It demonstrates that the agency is actively considering whether the terms it has prescribed for its discretionary grants of voluntary departure are too harsh and should be revised for the future, perhaps along the very lines that the Justices in today’s majority would choose if they were the Attorney General. It shows, in other words, that today’s interpretive gymnastics may have been performed, not for the enjoyment of innumerable aliens in the future, but for Mr. Dada alone.
* * *
In the final analysis, the Court’s entire approach to interpreting the statutory scheme can be summed up in this sentence from its opinion: “Allowing aliens to withdraw from their voluntary departure agreements . . . establishes a greater probability that their motions to reopen will be considered.” Ante, at 22. That is true enough. What does not appear from the Court’s opinion, however, is the source of the Court’s authority to increase that probability in flat contradiction to the text, of the statute. Just as the Government can (absent some other statutory restriction) relieve criminal defendants of their plea agreements for one reason or another, the Government may well be able to let aliens who have agreed to depart the country voluntarily repudiate their agreements. This Court lacks such authority, and nothing in the statute remotely dictates the result that today’s judgment decrees. I would affirm the judgment of the Court of Appeals.[2]

 An agency need not adopt, as we must, the best reading of a statute, but merely one that is permissible. See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 866 (1984). Moreover, the proposed rule, operating only prospectively, makes the ability to withdraw part of the deal that the alien accepts, and limits the alien’s commitment accordingly. Petitioner’s promise has already been made, and the requirement that he depart within the specified period is unconditional.

 Justice Alito agrees that the statute does not require the BIA to grant petitioner’s motion to withdraw from his agreement to depart voluntarily. He chooses to remand the case because the BIA did not give the reason for its denial of the withdrawal motion, and he believes the reason *31 would be the wrong one if the BIA thought it lacked statutory authority to grant. Post, at 32 (dissenting opinion). But petitioner has challenged neither the adequacy of the BIA’s reason for denying his motion, nor the BIA’s failure to specify a reason. He has argued only that the statute requires that he be allowed to withdraw.